Thank you and may it please the court. Pat McPhail for the Plaintiff Appellants. If I may, I'd like to reserve two minutes for rebuttal. Well, you'll just have to watch the clock and sit down if you wish to save any. The clock will keep running. Yes, Your Honor. This is a case of first impression. The question is whether the DOJ's 1995 instruction to police to get a subject off of his stomach as soon as he is handcuffed clearly established the rights of citizens. The district court went astray when it failed to recognize this 25-year-old federal government directive as controlling. The Supreme Court set the rule in Hope v. Pelzer. Defendants are not entitled to immunity if they have fair and clear warning that their conduct violates the rights of citizens. That warning can come from many sources, including reports from the Department of Justice, as was the case in Hope. Here, we have a very specific rule laid down over 20 years ago. You mean in Hope there was a DOJ report that informed what the court thought the Eighth Amendment meant? In Hope, the DOJ used, in part, the Department of Justice report to determine what was clearly established law. That is what we are arguing in this case as well, Your Honor. Now, in Hope, that's the example that we're using to show this is what you can use. Whenever there's nothing else on point, especially when there's nothing else on point, to show what was clearly established. Department of Justice reports, in that case, were used to show what was clearly established law. And that's what we argued in the trial court. There is a Department of Justice report from 1995 that lays out exactly what to do in this particular factual scenario. And that's in the record at the addendum at 59. And I'll quote it for you. Addendum where? Addendum at 59, Your Honor. Right. Thank you. It says, as soon as the subject is handcuffed, get him off his stomach. Turn him on his side or place him in a seated position. That is unambiguous. Yes, Your Honor. Do you have any case, though, that says the Fourth Amendment requires what the department directs officers to do? Your Honor, the reason why we're using Hope here is because, now, while the Fourth Amendment and the Eighth Amendment are different amendments, the analysis is still the same under qualified immunity. There's no difference in there. It's whether or not the defendant had a clear and fair warning. That's exactly what we're asking here. Was there, whether it was decisional or nondecisional authority, was there a clear and fair warning? And that's why I started this off by saying this is a case of first impression. Because I haven't found another case that looked like the district court didn't and the defendants didn't, where this actual directive was on point for the case. But on this case, it absolutely is. It is undisputed that the decedent in this case, Mr. Gilbert, was placed in a prone position, handcuffed, and had his leg shackled. And the defendants did not put him on his side or sit him up. What they did was they kept him in that prone position all the way until he stopped breathing and died. And that was the basis for this case. Again, this is an unambiguous rule. There's no room for judgment. It says as soon as you get him handcuffed, you've got to turn him on his side. The district court didn't even mention this directive by name in the opinion. In a footnote, it simply stated that plaintiffs cited an article and that the article didn't put the issue beyond debate because the defendants also cited a journal article written by a professor at Valdosta State University. Now, folks, your honors, I'm sorry. I use that term all the time, so I mean no offense. But the district court was just confused. This is a federal government directive from over 20 years ago. And it's being compared to a report by a sociology professor at Valdosta. It just doesn't make any sense. And there was no authority cited by the district court or the defendants that a sociology professor, their report has the same effect on the rule of law that the federal government does in the Department of Justice. You know, I hate to do this, but as I was reading this, I was kind of struck. And I just had some questions about, you know, both sides have argued that, you know, we're going to analyze this under the Fourth Amendment. But, you know, doesn't it matter that at this point he's a detainee and actually in custody as opposed to being an arrestee? And aren't we then in the Eighth Amendment, and don't we do the Fourteenth Amendment analysis? And isn't that even more favorable to the government than the analysis under the Fourth? Under this, Your Honor, it's actually less because whenever you're a pretrial detainee, you're in this secured facility where there's just no excuse to allow officers to keep a person on their stomach like that whenever there's a directive on point that says otherwise. Your Honor, I just don't think that the analysis is going to change because the rule is the same. If there is a fair and clear warning that the defendants are not supposed to do something, that means they're not entitled to qualified immunity. And so that's where there really is no difference other than the fact that, yes, here you're not out in the field. You're not having these rapidly changing or unknowable circumstances. These folks knew exactly what was going on. Yeah, I get that. But in Jackson v. Buckman, we said that we'd have to analyze whether there's actually a punishment being imposed. And if there's no punishment being imposed, there's no constitutional tort there. That's the question. And I agree with you, Your Honor. And that's another part. That's really the second part of where the argument goes is because on the facts, there is no excuse for what happened here. This was absolutely a punishment for this man's behavior. And that's where we got into trouble because the court, you'll notice it in the lower court's ruling, but even on page two of the ruling, it says whenever the court was reciting the facts, they're reciting the undisputed facts in the case. That means if the defendants were disputing one of the plaintiff's facts, it wasn't being considered in the factual section. And that's not how this works. We don't have to say that it was undisputed that this man was being punished for his activities. We just have to show that there was evidence. And the evidence in this case, from the plaintiff's point of view, as the court must take it, is pretty egregious. And I'll go over just a few of the things just so you know this is where we're coming from. Mr. Gilbert was arrested in an abandoned building for trespassing. He had outstanding parking tickets. There was nothing whatsoever violent about this man, and his crimes were not even remotely violent. Mr. Gilbert was then taken to the police station and put into a holding cell alone. And around an hour later, he began yelling, which, based on the testimony from the plaintiff's point of view, quote, aggravated officers who entered his cell to, quote, make him be quiet because he would not, quote, shut up. The district court took the opposite position. It stated its decision was based on the officers responding to Mr. Gilbert attempting suicide. Now, I understand there's two sides to every story, right, the plaintiff's view and the defendant's view. And the defendants will have their turn at trial to say this is why we acted this way. But at this point of the proceedings, we have to take the plaintiff's point of view and then apply that to the law. And in this case, we have the testimony of these folks, and I just want to apologize. I'm just going to quote what it was, but there is a curse word in it. They said they beat his ass. The police beat the dude up until he died. I mean, that's the facts from the plaintiff's point of view. This isn't a situation where we're talking about anything other than the police officers coming in to shut this guy up. And that's when they applied force. That is not acceptable under any analysis, whether it's the 8th Amendment, the 4th Amendment, 14th Amendment. And before I sit down, Your Honor, I just want to say a couple things about these cases because I know they're going to come up. First of all, first and foremost, Hanson. As two-thirds of this panel already know because that's how you wrote the opinion, Judge Shepard, that case actually helps us. That case, while you did not have the benefit of the DOJ report, you still ended up getting it right. Because in that case, after the officers handcuffed the suspect, they got him on his side, right? They put a pillow underneath of his arm, and they placed him on his side so he wasn't lying flat. That actually complied with the DOJ report. So we don't see Hanson as being an impediment to reversal at all. And the final one is Ryan. That case is by far dissimilar. Even the defendant's expert says those facts aren't on point here. The only similarity is that the force was used in a secure facility, but no force was applied after the cuffs were put on. And there wasn't any evidence that the defendants failed to put on the person on their side or sit him up. That's what the rule is, and that's what's on point. Your Honors, may I please reserve the rest of my time? You may. Thank you. Thank you. Mr. Derker. Bob Derker for the city and the ten individual police officers. If Hanson versus Best helps the plaintiff, then I guess I'm much more obtuse than I thought, because the Hanson case says in so many words that there is no robust consensus about prolonged prone restraint. And counsel led off in his argument with saying this is a case of first impression. It's difficult for me to see how a case of first impression can lead to the conclusion that the defendant officers violated a clearly established constitutional right when they attempted to protect the late Mr. Gilbert from himself and in the process triggered an unfortunate result that was attributable. And I admit the medical evidence is not undisputed, but it is undisputed that he was high on meth and had a very serious heart disease. But I would like to mention Judge Erickson's comment about the Eighth and the Fourth Amendments. I don't think the Supreme Court has definitively told us which amendment applies when you have an arrestee who is in custody and not in the field but in a cell. Rather than attempting to come to some conclusion about whether it's the Eighth or the Fourteenth or the Fourth, I think Kingsley teaches, however, that the issue fundamentally is the application of unreasonable force. And as Justice Scalia has commented, all force that causes death is not excessive force, is not unconstitutionally excessive force. And this is a situation where it's the classic situation that the Supreme Court has repeatedly said that you cannot look at this at a high degree of generality. You have to look at the facts and circumstances that the officers were confronted with. And I would like to emphasize that a number of these officers were not even in the cell when Mr. Gilbert ended up in the prone position on the floor. They responded to his apparent suicide attempt, which none of the plaintiff's witnesses, the other arrestees in the area, could see. Mr. McPhail understandably quotes the colorful language of one of the other arrestees, but that's his opinion about what was happening. The undisputed evidence is that these officers responded to Mr. Gilbert's cell when they saw evidence, indications, that he was attempting to commit suicide. And they went in to try to stop that. And in the process, they really had no choice but to attempt to restrain him. And in the process, there was a lot of flailing and a lot of difficulty in restraining him. And so I would submit that certainly the officers who initially responded, initially handcuffed him, initially got him in a position where he was bent over the concrete bench, and then left, applied no unreasonable excessive force. They were attempting to respond to the situation as it was unfolding. They had no notice of his intoxication on meth. They certainly had no notice of his heart disease. And in fact, he had denied drug usage when he was booked in. So the officers, I think, responded reasonably. And Sergeant Bergman and Officer DiGregorio and Officers Stuckey and King had him, attempted to get him under control. Officer Wachter then later responded with leg shackles. But after Mr. Gilbert was on the floor, Officer Wachter did not apply any force to him. There were other officers, Officer Vanita and Officer Lemons and some other officers who had responded, who held him down, while there were repeated calls for emergency medical services, because the objective was to get him in a position where they could transfer him for medical treatment. So I would submit that this case falls at the first stage of the qualified immunity analysis as far as the individual officers are concerned. There was no unreasonable, unconstitutional, excessive force. I think that there was physical force, certainly. Well, one concern I had about the district court's order is that when it got to the failure to train claims, is it failure to train? Well, with due respect to my opponent, he tends to kind of blur policy, custom, and failure to train. Well, in any event, you know the claims I'm referring to. I know what you're talking about, Your Honor. I forget which count, but the court seemed to say because she had ruled qualified immunity for the officers individually, the city couldn't be liable. I wonder whether that's wrong analytically, because if the court only ruled qualified immunity, it didn't decide whether it was a constitutional violation. And now you argue we should affirm on the first prong, saying there is no constitutional violation from which it would follow that the city is not liable. But if we only have qualified immunity, then wouldn't we have to analyze the city claim independently? Your Honor, I confess that that's a matter of, I think that's a matter of debate. Can you have a municipal liability when no unconstitutional action has been committed by the employee? No, you cannot there, but that's not my question. Well, I was about to say, I understand. The second prong is, you know, whether the officers should have known or knew that they were violating a clearly established constitutional right. They could have city liability if they violated a constitutional right, but they didn't violate a clearly established right. Well, and I think that takes us into the realm of causation. You know, Heller obviously dealt with a case where there was no liability on the part of the officers, but the immunity issue was not addressed in Heller, in Los Angeles v. Heller. I submit that if the officers are immune, the city cannot be liable, because the problem you run into, and I told myself I shouldn't allude to this fact, but the last case I argued in this circuit was Proprotnick, which I lost, and my colleagues got a favorable outcome in the Supreme Court. The issue of municipal liability is a vexing one, because there is no respondeat superior. So Brown v. County Commissioners clearly says that the conduct of the municipality has to be the moving force in the constitutional violation, and if the officers cannot be convicted of having violated anybody's constitutional rights, it's difficult for me to see how a city policy or custom, when we're dealing with unwritten policies or omissions, figures a trend. Well, I don't understand why that's so hard to conceptualize. I mean, maybe it doesn't apply here, but if the city has a policy to hold people prone on their stomachs indefinitely, say they had that affirmative policy, and we were to say that's unreasonable, force. Would that be a Monell? Even though they have qualified immunity, because we'd never said it before, why couldn't the city be liable for having caused an unconstitutional use of force? Well, I take that point, Your Honor, and I appreciate that that is the conundrum, and I acknowledge that that could be the outcome, because obviously in Monell, the forced pregnancy leave policy was facially unconstitutional. Right, right. So the city was liable. All right, so here, I understand your first point is you think there was no constitutional violation at all, but alternatively, do you have a view on what the policies were or customs and whether they caused any of this? Yes, indeed, Your Honor. There is certainly nothing in the record that supports the proposition that the city trains its officers to apply force to a prone, restrained individual for prolonged periods. The city's use of force policy is a policy that requires observation of constitutional standards in the sense that excessive force is not the amount of force that's to be applied is only that amount that is required to achieve the appropriate objective of causing the arrestee or the prisoner to submit to authority. And there is certainly no written policy that says, you know, we don't care about the Justice Department guidelines. When you've got an unruly prisoner, hold him down and apply weight to his back until he stops moving. That's not the city's policy. There's no evidence to support that. Furthermore, and as you know from the Zabla-Brooklyn case, there has been no pattern of deaths resulting from prolonged prone restraint in the city police department. As far as we can tell, as far as the record is concerned, this is the first incident that could have been brought to the city's attention. And so there is no deliberate indifference, and there certainly is no express policy authorizing prone restraint to the point of unconsciousness. And, in fact, the police officer's conduct here, as I indicated, I think was entirely reasonable under the circumstances that they faced. But I emphasize that there is, under the Zabla standard, the plaintiff's claim against the city must fail without regard to the immunity issue. So I ask that the district court be reaffirmed because it was one of the best district court opinions I've ever read. Thank you. Thank you for your argument. Mr. McPhail, do you have a brief rebuttal? The first point is the Hope v. Pelzer case. It's a Supreme Court case, Your Honors. It says very clearly, even in novel factual circumstances, a person can be on notice that their conduct violates clearly established law. That's the Supreme Court saying that in the same case that they use a Department of Justice guideline. So this court does not need to have ruled on this set of circumstances to find a clearly established violation. The second thing is, Your Honors, most of what you just heard was just the defendant's version of the facts. If we're talking about which set of facts to believe, then this has to go back down because this is summary judgment. Whether or not you believe the defendants and their story, that's another question. This is summary judgment. You have to take the facts as the plaintiffs plead them, and it is absolutely disputed that they went in there to try to save this man. We've pleaded in our petition. We've put in our briefs. They went in there to shut him up. Your Honors, I'm out of time. I can answer questions, or I can sit back down. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted, and the court will file an opinion in due course.